FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUN 16 PM 12: 50
U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHN T. BURKS; CLAUDIA COOK;        )
JOHN CRUMB; ED DANCY, JR.;          )
CALVIN W. JOHNSON; DAVIS            )
JORDAN; MYRTLE KILGORE; HARDY       )
DOUGLAS MARLIN; SADIE L.            )
MCLOYD; GRACE I. MEALER;            )
WILLIAM POLLARD; ISAAC L.           )
ROSS; for themselves and as         )
representatives of the class        )
comprised of all those who          )
retired from AMERICAN CAST          )
IRON PIPE COMPANY prior to          )
September 2, 1974, and their        )
dependents,                         )
                                    )
        Plaintiffs,                 )
                                    ) CIVIL ACTION NO. 99-G-1085-S
    v.                              )
                                    )
AMERICAN CAST IRON PIPE             )
COMPANY,                            )
                                    )
        Defendant.

ENTERED
JUN 16 1999

MEMORANDUM OPINION

John T. Burks and the other-named plaintiffs in the above-styled case filed suit in the Circuit Court of Jefferson County, Alabama, on March 15, 1999, on behalf of

themselves and a putative class. The defendant was not served until an April 1, 1999, amended summons and amended complaint were served by certified mail on April 5, 1999. Defendant removed the case to federal court on April 30, 1999. Plaintiffs filed a motion to remand, and defendant filed a motion to dismiss, or in the alternative for summary judgment which this court has taken as a motion for summary judgment. Plaintiffs filed a motion to continue the summary judgment motion to allow for discovery.

Plaintiffs, former employees of American Cast Iron Pipe Company [hereinafter ACIPCO] or dependents of former ACIPCO employees who retired prior to September 2, 1974, allege ACIPCO[1] promised them free lifetime medical treatment and benefits, including free prescription drugs following retirement.

---

[1] The complaint specifies that Steve Moxley, a former ACIPCO president, told them in the 1950's that the promised benefits replaced higher wages received by employees of U.S. Steel. In addition plaintiffs allege that the promises were regularly made by senior ACIPCO executives before and after 1974.

2

Summaries of ACIPCO health plans were distributed to employees through the years incorporated within employee manuals or employee handbooks. Language in paragraph one of the September 1969 manual follows:

> Acipco provides medical services and sick benefits to employees, retired employees and certain dependents as outlined in subsequent paragraphs. medical services and sick benefits provided may be changed or abolished without notice at Management's discretion. This statement is descriptive only and shall not be construed to create any vested rights in any person or obligation on the part of the Company.

Identical or substantially identical language appeared in later manuals: the March 2, 1972, manual; November 1977 manual; November 1981 manual; June 1, 1987, manual (welfare plan[2] under ERISA); and, June 7, 1990, manual.

On September 2, 1974, Congress enacted the Employee Retirement Income Security Act of 1974 [hereinafter ERISA], 29 U.S.C. §§ 1001 et seq. Enactment of ERISA was to protect "the interests of participants in employee benefit

---

[2] The plan established by ACIPCO was the "American Cast Iron Pipe Company Medical and Dental Benefits Plan for Employees and Pensioners Other Than Active Branch Office Employees" [hereinafter the Plan].

3

plans and their beneficiaries," 29 U.S.C. § 1001(b),and to safeguard the financial integrity of employee benefit plans through "uniform and comprehensive regulation" of the plans. *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 1758, 138 L. Ed. 2d 45 (1997), *reh'g* denied, 118 S.Ct. 9, 138 L. Ed. 2d 1043 (1997).

ERISA carries with it a preemption clause set forth below:

> Except as provided un subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a). *See also*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) (ERISA "subjects to federal regulation plans providing employees [and retirees] with fringe benefits."); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990), 133 S. Ct. 478,112 L. Ed. 2d 474, 483(1990) (ERISA contains a "broadly worded preemption provision" that is

"deliberately expansive" and designed to establish the regulation of employee benefit plans "as exclusively a federal concern.") (Quoting language from *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S. Ct. 1549, 95 L. Wd. 2d 39 (1987)); *Amos v. Blue Cross-Blue Shield of Ala.*, 868 F.2d 430, 431 (11th Cir. 1989), *cert. denied,* 493 U.S. 855 (1989) ("ERISA preemption is not a gateway but a barrier to state law causes of action, the effect of which is to completely displace state law claims."); *Howard v. Parisian, Inc.*, 807 F. 2d 1560, 1563 11th Cir. 1987) (The assertion of claims arising under state law is preempted by ERISA "even if those laws do not expressly concern employee benefit plans and amount only to indirect regulation of such plans.")

   Exclusive enforcement provisions of ERISA are set forth in 29 U.S.C. § 1132(a). Civil suit may be brought by a participant or beneficiary, Secretary, fiduciary, or employer, with specific provisions set forth for pursuit of remedies by the named parties.

ERISA provides that Section 514(a) "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b). Health care plans established by employers before Congress enacted ERISA and that were maintained thereafter became subject to ERISA in 1975. 29 U.S.C. §§ 1002(1),[3] 1003(a), 1144(a). *See also Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 526 n.23, 101 S. Ct. 1895, 68 L. Ed. 2d 402, 418 n.23 (1981) (Congress's enactment of ERISA eliminated state law causes of action and state law claims relating to employment benefit plans which were viable before ERISA's enactment.)

Since ERISA became law ACIPCO's health plan has been operated and administered in compliance with the law. Its Plan fulfills the five prerequisites for an ERISA welfare benefit plan: (1) an employee benefit plan (2)

---

[3] "The terms "employee welfare benefit plan' and· 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an by an employer or by an employee organization, or by both, .... "

established and maintained (3) by ACIPCO (employer) (4) for the purpose of providing medical benefits (5) to participants and their families. *Smith v. Jefferson Pilot Life Insurance Company*, 14 F.3d 572, 567 (11th Cir. 1994),*cert denied*, 513 U.S. 808 (1994). The plan is maintained pursuant to a written instrument,[4] provides a procedure for amending the plan,[5]; and provides a claims procedure as required by § 503 of ERISA.[6]

Beginning January 1, 1993, the Financial Accounts Standards Board changed its accounting procedures requiring reporting on financial statements of future contingent liabilities relating to retiree benefits.[7] In response to FASB 106 which increased ACIPCO's liability for accounting purposes on its financial statement, ACIPCO's of Directors[8]

---

[4]  29 U.S.C. § 1102(a)(1);(2).

[5]  29 U.S.C. § 1102(b)(3).

[6]  29 U.S.C. § 1133.

[7]  The new standard was known as Financial Accounting Standards Board No. 106, [hereinafter FASB 106].

[8]  The board includes non-management employee directors.

amended its Plan. Amendments included provisions by which "pensioners and dependents previously covered at 100% of the eligible charges for prescription drugs dispensed at the ACIPCO Pharmacy" would have to make a 25% co-pay. A $40 a month increase in pensions was granted to help defray the cost of the co-pay.

Plaintiffs have objected to the change and have claimed ACIPCO misrepresented that they were entitled to continued free medical benefits and treatments, including prescription drugs, after they retired, relying on the alleged statements of Moxley and other senior ACIPCO executives. These "misrepresentations," however, took place years before the enactment of ERISA. For twenty years ACIPCO has provided complete medical benefits to its employees and retirees, and their dependents. It was not until 1994 after FASB 106 was in place that ACIPCO amended its Plan requiring participants to contribute to the cost of medicine. In spite of any alleged "oral promises," the language in employee plans or handbooks, either distributed to or made available to ACIPCO employees prior to enactment of ERISA,

8

specifically states that the benefits were subject to change and that participants did not have vested rights.

The court has several motions before it. The primary motion is the motion for summary judgment. Material submitted to the court on this motion is dispositive in reaching decisions on the other motions. For the reasons set forth above the court holds that as a matter of law the motion for summary judgment should be granted. ERISA preempts any state claims alleged by defendants. ERISA is applicable to the case at bar.

Since ERISA is applicable the court holds that the motion for a continuance of the summary judgment motion for the purpose of conducting more discovery is unnecessary. Discovery will not take this action out of the parameters of ERISA.

The court further holds that the motion to remand should be denied. ERISA preempts state law claims. The case is properly before this court.

As an aside, the court notes that ACIPCO has treated its retirees and their dependents well through the

years, caring for their medical needs. Although the company was not obligated to provide complete, free medical care,[9] it continued to provide these benefits until the enactment of FASB 106 changed its liability. The company had every right to change the employee benefits and was within its rights in doing so.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this 16th day of June 1999.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

---

[9] ACIPCO specifically stated with the publication of each employee manual that benefits were not vested and could change.

10